UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS – FORT WORTH DIVISION

| | |
|---|---|
| Daniel Carey, Robert Held, and Lloyd Hill, ) | |
| ) Plaintiffs, ) | |
| ) | |
| V ) | |
| ) | |
| Allied Pilots Association, ) | |
| ) Defendant ) | |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 1 4 2003

CLERK, U.S. DISTRICT COURT
By _____
Deputy

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

NOW COME the Plaintiffs Daniel Carey, Robert Held, and Lloyd Hill, by and through their attorneys, Bodian & Bodian, LLP and Eugene DuBose, and complain of the Defendant Allied Pilots Association (hereinafter the "APA") as follows:

### JURISDICTION AND VENUE

The Plaintiffs seek injunctive relief to enjoin the Defendants from a course of conduct which, if allowed to occur, will cause the Plaintiffs irreparable harm and injury.

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because the Plaintiffs' claims in this case arise under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §401 et seq., and the Labor Management Relations Act, 29 U.S.C. §185.

2. Venue is proper in this Court because the principal office of the Allied Pilots Association is within this district, 29 U.S.C. §412, and because on information and belief the Allied Pilots Association does business within this district. *Denver & Rio Grande Western Railroad, Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 562 (1967).

## PARTIES

3. Plaintiff Daniel Carey is a pilot who is a member in good standing and a Director of the APA.

4. Plaintiff Robert Held is a pilot and a member in good standing of the APA in the Chicago Domicile.

5. Plaintiff Lloyd Hill is a pilot and a member in good standing and former Negotiating Committee Chairman of the APA.

6. The APA is a non-profit, unincorporated association that represents airline pilots in employment related matters.

## BACKGROUND

7. The governmental powers of the APA are vested in the Board of Directors and the officers. See *Constitution and Bylaws* Art. II, sec. 2(A), a copy of which is attached hereto as Exhibit A.

8. The conduct of the Directors and the Officers of the APA is governed by the APA Constitution and Bylaws and the APA Policy Manual. See Exhibit A and the APA Policy Manual, a copy of which is attached hereto as Exhibit B.

9. Under the Constitution and Bylaws of the APA, the APA Negotiating Committee is responsible for negotiating a proposed agreement with American Airlines, Inc. Once the Negotiating Committee and the airline carrier reach a proposed agreement, the Negotiating Committee submits the proposed agreement to the APA which, in turn, must tender the contract language of the proposed agreement to the Directors no less than seven (7) days prior to any meeting commenced to vote upon the Tentative Agreement. See Exhibit B.

711608_1

2

10. Upon the agreement being approved by a majority vote of the APA Board of Directors (the "Board"), the agreement is then termed a "Tentative Agreement" ("TA"), and is to be provided to the APA membership at large (the "Membership"), and a vote taken thereon to conclude no less than 14 days from the date of the provision of the Tentative Agreement to the APA membership, regardless of any earlier date on which the ballots were sent out.

11. Both the negotiating process, the Board approval process, and the Membership voting process, are governed in detail by the APA Constitution and Bylaws and the APA Policy Manual. See Exhibits A and B, and by Federal law, including the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §401, et. seq. and the Labor Management Relations Act, 29 U.S.C. §185, et. seq.

12. The Board has unlawfully and improperly approved a Tentative Agreement, and has unlawfully and improperly required the Membership to complete its voting on that purported Tentative Agreement on April 14, 2003, all in direct contravention of the APA's own Constitution and Bylaws and the APA Policy Manual, and of Federal law, including the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §401, et. seq., and the Labor Management Relations Act, 29 U.S.C. §185.

13. At no time during either the Board's approval vote, or the subsequent Membership voting period, has a final, written, version of the purported Tentative Agreement existed or been provided to the Board or to the Membership upon which to base an informed vote.

14. The APA Policy Manual, in sections 9.06 and 9.07, contains language adopted in 1997, 1998, and 2000 as a direct result of problems encountered by the Board and the Membership during preceding protracted and controversial contract negotiations and votes.

3

711608_1

15. The APA Negotiating Committee recently purported to reach a proposed agreement with American Airlines. The APA held a Board of Directors Meeting on Sunday, March 31, 2003. The purpose of the meeting was to vote on whether or not to accept the Tentative Agreement reached between American Airlines and the APA Negotiating Committee.

16. A majority of the Board approved the Tentative Agreement at the March 31, 2003 meeting.

17. The Tentative Agreement negotiated by the APA Negotiating Committee and approved by the Board with American Airlines is very controversial, in that it provides for billions of dollars of wage concessions, givebacks, layoffs and other concessions to American Airlines by the APA Membership.

18. The Tentative Agreement submitted to the Board was not in final written form when approved by the Board.

19. In fact, numerous substantive provisions of the Tentative Agreement remained not only unwritten, but unresolved, at the time of the Board's March 31 vote.

20. As such, the Tentative Agreement is void, and will hereinafter be referred to as the purported Tentative Agreement.

21. The purported Tentative Agreement was not in final written form when submitted to the Membership after being approved by the Board.

22. The purported Tentative Agreement has, up to the date of the filing of this Complaint, not been provided in final written form to the Membership.

23. The unprecedented degree of concessions contained in the purported Tentative Agreement, including but by no means limited to productivity givebacks which could result in

over 20% of the APA's members being laid off, render it highly controversial and of paramount importance to the Membership.

24. Given the serious and substantial nature and implications of the purported Tentative Agreement, compliance with the APA procedures as set forth in the Constitution, Bylaws and APA Policy Manual to provide for controlled negotiations of any Tentative Agreement, and an informed vote of the APA members with respect to the purported Tentative Agreement, is crucial.

25. The lack of a final written document for evaluation by the Membership prior to voting makes it impossible for an informed vote by the Plaintiffs, and by the entire APA Membership.

26. As things now stand, the Membership vote on the purported Tentative Agreement will be fatally flawed if it goes forward as scheduled.

## THE BOARD VOTE

27. On March 31, 2003, without the benefit of a written document containing the contract language, the Board voted to accept a Proposed Agreement from American Airlines, Inc.

28. Section 9.06 of the APA Policy Manual requires that the Negotiating Committee send the Proposed Agreement to the Board of Directors "at least seven (7) days prior" to the date when the Board of Directors meeting is set to convene.

29. Section 9.06(A)(2) of the APA Policy Manual specifically sets forth the requirements for submitting a Tentative Agreement to the Board Members. It requires that:

711608_1

5

The Tentative Agreement, all related letters, and the implementation schedule, in contractual language, with all changes clearly identified, shall be furnished to the Board of Directors <u>at least seven (7) days prior to any meeting convened to consider the Tentative Agreement.</u>

30. The Negotiating Committee did not provide the Tentative Agreement to the Board of Directors "at least seven (7) days prior" to the date when the Board of Directors meeting is set to convene.

31. In fact, the Negotiating Committee did not at any time prior to the vote of the Board, and indeed has not to this date, provided a substantially complete Tentative Agreement to the Board of Directors.

32. The short notice and the lack of a substantially final Tentative Agreement given by the Defendant's Negotiating Committee to the Defendant's Board does not comply with the requirements set forth in the APA Constitution, Bylaws and Policy Manual for holding a Board of Directors meeting and for voting on Tentative Agreements. Consequently, any vote pursuant to such inadequate notice and inadequate documentation would be void.

33. If the vote by the Board is void, then there can be no vote by the Membership.

## **THE MEMBERSHIP VOTE**

34. APA President John Darrah, in advance of the Board's vote on the Tentative Agreement, through the American Arbitration Association, distributed voting instructions to the Members on or about March 26, 2003 by U.S. Mail. Voting could be done on-line or by telephone. A copy of the voting instructions is attached hereto as Exhibit C.

35. Section 9.07 provides numerous provisions in order to ensure an informed vote by the Membership on any Tentative Agreement submitted to them by the Board, including, in pertinent part:

> 9.07(1): "The Tentative Agreement, all related letters, and the implementation schedule shall be reduced to contractual language."

> 9.07(6): "The approved explanation of the Tentative Agreement, as well as the complete text of the Tentative Agreement, Supplements, published letters, the proposed implementation schedule, and a comment letter from each member of the Board of Directors who wishes to send one shall be mailed to the membership before any "Road Show" presentation begins. The membership at each domicile shall have at least fourteen (14) days to study the written text of any Tentetaive Agreement, Supplements, published letters, the proposed implementation schedule, and a comment letter from each member of the Board of Directors who wishes to send one prior to the presentation of a "Road Show" at that domicile."

36. Defendant has failed to comply with the provisions of Section 9.07.

37. On March 26, 2003, the Board announced to the Membership that it had passed a Resolution (the "Resolution") authorizing the temporary suspension of Section 9.07 of the Policies, and substituting certain other policy in its place. A copy of the Resolution is attached hereto as Exhibit D.

38. Section 9.06 of the Policy Manual provides, in pertinent part:

> 9.06 D: " The National Officers, Board of Directors, and Negotiating Committee shall not allow the negotiations/mediation/super-mediation process to be conducted in haste. The Association will not alter its negotiating procedures because of pressure or the imposition of deadlines set by management or the National Mediation Board (NMB) or other sources. These commonly used tactics must not be allowed to influence the conduct of APA's bargaining because hastily constructed agreements and unwritten or incomplete agreements frequently contain deficiencies or errors or provisions that later prove to be contrary to the best interests of the union members involved."

39. This language of Section 9.06 of the Policy Manual was violated and subverted by the Board when it acted to suspend the procedural protections of Section 9.07.

7

711608_1

40. This language of Section 9.06 of the Policy Manual was also directly violated by the Board's failure to reduce the Tentative Agreement to writing, and to provide a final agreement to the Membership sufficiently in advance of a vote.

41. This action was taken by the Board in an effort to circumvent the requirements, both under the APA's own guidelines (both the Constitution and Bylaws and the Policy Guide), and under Federal law, that the Members have the opportunity for an informed vote on the Tentative Agreement.

42. Moreover, Defendant's actions fail to conform with even the substituted, watered-down language contained in the Resolution, which itself requires that the Tentative Agreement "be submitted to the active members in good standing for an affirmative vote."

43. Under both federal law, the "suspended" provisions of APA Policy 9.06, and even under the Board's own Resolution, the Membership must have a written agreement on which to base their voting decision.

44. There exists no final written agreement for the evaluation of the Membership during the period from March 31 through the date of this Complaint, despite Defendant's insistence that the 14 day voting period is running, and is to conclude on April 14, 2003.

45. The Tentative Agreement, when completed, will consist of approximately 26 sections. See Exhibit E attached hereto.

46. On April 1, 2003, Defendants posted on APA website a portion of the Tentative Agreement purporting to be the agreement which the Membership was to vote on.

47. The April 1, 2003 posting contained only some of the sections of the Agreement.

8

711608_1

48. One of the most important sections of the Agreement is the "Scope," the text of which was posted on the website on April 1, 2003. A copy of the April 1 "Scope" language is attached hereto as Exhibit F.

49. On or about April 3, 2003, a new Scope section of the Tentative Agreement, containing different language than that of the April 1 posting, was on the website. A copy of the April 3 "Scope" language is attached hereto as Exhibit G.

50. On or about April 7, 2003, a third version of the "Scope" section was posted to the APA website, again containing different language than the previous posting. A copy of the April 7 "Scope" language is attached hereto as Exhibit H.

51. Other than the web postings, the Defendant had not made copies of the purported Tentative Agreement available to the Membership through any other means, except that some sections of some versions were sent by U.S. Mail.

52. Upon information and belief, none of the Membership had received their mailed copies of any section or version of the purported Tentative Agreement prior to April 6, 2003.

53. On or about April 7, 2003, some – but by no means all - of the Membership reported receiving portions of written Tentative Agreements in the mail.

54. The mailed Tentative Agreement differs from the versions posted on the APA website.

55. At least one section of the purported Tentative Agreement has not been posted to the website at all.

56. Several of the changes or differences among the various versions of the "Scope" section of the purported Tentative Agreement are substantive in nature, and would have a significant impact on the Membership.

9

711608_1

57.     Additionally, several of the changes or differences among the various versions of the "Definitions" section of the purported Tentative Agreement are substantive in nature, and would have a significant impact on the Membership

## THE ONGOING NEGOTIATIONS

58.     Despite its requiring the Membership to complete its voting on the purported Tentative Agreement by April 14, 2003, Defendant itself admits that the purported Tentative Agreement is still being negotiated.

59.     Indeed, on information and belief, negotiations on numerous substantive issues in the purported Tentative Agreement continue between the APA and American Airlines to this date.

60.     On April 6, 2003, an e-mail communication was sent from Gregg Overman, APA Communications Director, to the entire Membership. That e-mail makes clear that negotiations regarding the purported Tentative Agreement continue, stating, in pertinent part "We have received a great deal of feedback from pilots regarding two aspects in particular of the Tentative Agreement: the six-year duration and the minimal pay raises. ... APA President Captain John Darrah and the other union presidents have been in contact with AMR management as recently as today to relay the sentiments of our respective members. We will continue to work with management in hopes of finding a resolution that provides fairness for all, particularly given the context of what we are dealing with. As we receive additional information, we will pass it along to you." A copy of that email is attached hereto as Exhibit J.

61.    On April 9, 2003, the APA held a so-called "road show" in the New York Domicile, near LaGuardia Airport, to discuss the features of the Tentative Agreement with the Membership. At that event, the question of what the Tentative Agreement consists of was raised, and the Board member running the road show acknowledged that it is a work in progress.

62.    Moreover, at that April 9, 2003 road show, a Board representative publicly acknowledged that the APA Board or Negotiating Committee were still engaged in negotiations with American Airlines, Inc.

63.    Any claim by the APA that a substantially final written agreement exists can not be reconciled with these ongoing negotiations, nor with the fact that various and differing versions of the purported agreement have been provided to the Membership during the voting period.

64.    Similarly, any required vote of the Membership could not possibly be "informed" in light of the ongoing negotiations occurring during the APA-proclaimed voting period.

65.    The failure of the Defendant to provide a final Tentative Agreement to the Membership does not comply with the requirements set forth in the APA Constitution, Bylaws or Policy Manual, and, in short, precludes the Membership from making an informed decision regarding their vote on this important agreement.

### COUNT I
### THE BOARD VOTE CONSTITUTED A VIOLATION OF THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT 29 U.S.C. §401 ET SEQ.

66.    The Plaintiffs adopt and reallege all previous allegations set forth above as if those allegations were fully set forth herein.

67. The Defendant has materially violated the terms of the APA Constitution and Bylaws, and the APA Policy Manual, by failing to provide adequate notice and terms of the Tentative Agreement to the Directors and by nonetheless scheduling a vote on the Tentative Agreement, and purporting to have approved the Tentative Agreement despite those violations, and despite the fact that the material terms of the Tentative Agreement were not finalized or written at the time of such vote.

68. The above referenced breaches by the Defendant have caused and continue to cause the Plaintiffs irreparable injury for which there is no adequate remedy at law.

WHEREFORE, the Plaintiffs Daniel Carey, Robert Held and Lloyd Hill pray for entry of an Order by this Court:

(a) enjoining the APA and/or its Board of Directors from taking any action concerning the Tentative Agreement until a final written version of the Tentative Agreement exists; and

(b) declaring the March 31, 2003 approval of the Tentative Agreement by the APA Board of Directors to be null and void.

## COUNT II

### SCHEDULING OF THE MEMBERSHIP VOTE , AND COUNTING AND CERTIFYING SUCH VOTE, CONSTITUTES A VIOLATION OF THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT 29 U.S.C. §401 ET SEQ.

69. The Plaintiffs adopt and reallege all previous allegations set forth above as if those allegations were fully set forth herein.

70. The Defendant has materially violated the terms of the APA Constitution, Bylaws and Policy Manual by failing to provide adequate notice and terms of the purportedly Board-approved Tentative Agreement to the Membership, and by nonetheless scheduling a vote on the Tentative Agreement to take place from April 1, 2003 concluding on April 14, 2003 despite

711608_1

12

those violations, and despite the fact that the material terms of the Tentative Agreement were not finalized or written during the time period for such vote.

71.     The above referenced breaches by the Defendant have caused and continue to cause the Plaintiffs irreparable injury for which there is no adequate remedy at law.

## COUNT III

### SCHEDULING OF THE MEMBERSHIP VOTE , AND COUNTING AND CERTIFYING SUCH VOTE, CONSTITUTES A VIOLATION OF THE LABOR-MANAGEMENT RELATIONS ACT 29 U.S.C. §185

72.     The Plaintiffs adopt and reallege all previous allegations set forth above as if those allegations were fully set forth herein.

73.     The Defendant has materially violated the terms of the APA Constitution, Bylaws and Policy Manual by failing to provide adequate notice and terms of the purportedly Board-approved Tentative Agreement to the Membership, and by nonetheless scheduling a vote on the Tentative Agreement to take place from April 1, 2003 concluding on April 14, 2003 despite those violations, and despite the fact that the material terms of the Tentative Agreement were not finalized or written during the time period for such vote.

74.     The above referenced breaches by the Defendant have caused and continue to cause the Plaintiffs irreparable injury for which there is no adequate remedy at law.

WHEREFORE, the Plaintiffs Daniel Carey, Robert Held and Lloyd Hill pray for entry of an Order by this Court:

(a)     enjoining the APA and/or its Board of Directors from requiring the Membership to vote on the Tentative Agreement until a final written version of the Tentative Agreement exists; and

711608_1

13

(b) enjoining the APA and/or its Board of Directors from terminating the membership voting on the Tentative Agreement on April 14, 2003; and

(c) enjoining the APA and/or its Board of Directors from counting the ballots on April 14, 2003; and

(d) enjoining the APA and/or its Board of Directors from certifying the results of said ballots, and from otherwise accepting, signing or finalizing the Tentative Agreement prior to the APA membership having the time and written information necessary to make an informed vote on the Tentative Agreement as required under Federal law and the APA Constitution, Bylaws and Policy Manual.

Dated: April 10, 2003      Respectfully submitted,

By: _____
David H. Bodian, Esq.

DHB-2625

One of the Plaintiffs' Attorneys

711608_1

14

Eugene Zemp DuBose
TBN 06151975
3303 Lee Parkway
Dallas, Texas 75219
(214) 520-2983
fax (214) 520-2985

David H. Bodian
BODIAN & BODIAN, LLP
425 Broad Hollow Road
Melville, New York  11747
(631) 249-3900
fax (631) 249-4298

711608_1

## VERIFICATION

I, Robert Held, a member of the Allied Pilots Association, being first duly sworn under oath depose and state that I have read the foregoing Complaint for Injunctive Relief and find the allegations contained therein to be true and correct to the best of my knowledge, information and belief.

_____
Robert Held

Subscribed and Sworn to before me
this ____ day of April, 2003

_____
Notary Public

"OFFICIAL SEAL"
GLENDA RENÉ BROADUS
Notary Public, State of Illinois
My Commission Expires 9/1/04